UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEILANI JASINSKI DEMINT, et al.,

    Plaintiffs,

vs.

NATIONSBANK CORPORATION, et al.,

    Defendants.

Consolidated
Civil Action Nos.:
94-995-CIV-T-23E
94-2094-CIV-T-23B



### AFFIDAVIT OF DAISY SONALAN

STATE OF NEW YORK  )
                            )  ss.:
COUNTY OF NASSAU  )

DAISY SONALAN, being duly sworn, deposes and says:

1.    I am a Senior Project Manager of The Garden City Group, Inc. ("GCG"), which was engaged to serve as Claims Administrator for the administration of the settlement in the above-captioned litigation (the "Litigation").

### PROJECT OVERVIEW AND STATISTICS

2.    I make this affidavit in support of plaintiffs' application for orders (a) approving the administrative action taken by GCG in accepting and rejecting the claims filed by claimants herein and allocating the net settlement fund among the claimants who have filed acceptable proofs of claim; (b) directing a distribution of the Net Settlement Fund to all eligible claimants in proportion to their Recognized Losses as calculated under the Stipulation and Agreement of Compromise and Settlement; (c) dispose of any monies remaining in the Settlement Fund after distribution, as directed by the Court; and (d) authorizing destruction of paper copies of Proof of Claim forms one year after distribution of the

Net Settlement Fund, and authorizing destruction of electronic copies of claim records three years after distribution of the Net Settlement Fund.

## PROCEDURES FOLLOWED IN GIVING NOTICE TO POTENTIAL CLASS MEMBERS AND ACCEPTING AND REJECTING CLAIMS

3. Between the dates of September 21, 1997 through December 9, 1997, GCG received from Lexecon, Inc. ("Lexecon") master files on computer tape containing names, addresses, tax identification numbers and account numbers ("IND" data) of individuals or entities who were sold a Non-Depository Investment Security by or through NationsBanc Investments, Inc., f/k/a NationsBanc Discount Brokerage, Inc., f/k/a NationsBanc Securities, Inc., NationsBanc Securities of Georgia, Inc. (as and when affiliated with NationsBank Corporation) or NationsSecurities or any successor of any of them during the period from August 25, 1991 through June 12, 1996, inclusive (the "Class Period"), trading records for the potential Class Members identified in the IND data tape, replacement tapes containing detail transactions for NationsFund open-end and Money Market accounts, replacement IND data tapes of the NationsFund open-end and Money Market accounts, NationsFund trading records, master file containing the corresponding CUSIP numbers for all trading records and replacement tape containing the trading records for Stephens and Dean Witter Reynolds/Nations accounts.

4. GCG's Systems Department wrote programs to (a) associate the transactional data records contained in the various files provided to us as described in ¶3, above, to the corresponding IND data records, and (b) identify and remove duplicates between entities. As a result of this process, GCG created files containing names, addresses and tax identification records of 529,511 potential Class Members to be preprinted on the Claim forms.

5. Between the dates of October 13 and 17, 1997, GCG sent to Rosen Mandell & Immerman ("RMI") four (4) magnetic media containing the 529,511 names, addresses and tax

2

Claim forms and Security Transaction forms which were inserted into envelopes with a Notice of Pendency of Class Action and Hearing on Proposed Settlement and Dismissal of Action (the "Notice"), and General Instructions (collectively, "Claim Packets").

6. Between the dates of October 20, 1997 and October 21, 1997, RMI mailed 529,511 Claim Packets to potential Class Members.

7. After the initial mailing, GCG disseminated an additional 8,433 Claim Packets in response to individuals or entities who contacted us by mail to request an initial or follow-up mailing and requests from brokers seeking multiple copies.

8. GCG contracted with Operator Standing By ("OSB") of Sarasota, Florida to handle the phone inquiries concerning the litigation, using "scripts" developed by GCG and reviewed by the parties hereto. Through March 23, 2000, GCG and/or OSB have responded to 39,874 phone inquiries from Class Members generated by mailing of Claim Packets, deficiency letters and inquiries on status of the litigation.

9. GCG received a total of 18,578 Proofs of Claim, including 18,155 postmarked on or before the filing deadline of May 8, 1998 and 423 postmarked after the filing deadline.

10. The procedure followed by GCG in processing the claims was to receive all correspondence and claims filed in this matter from Post Office Box 9385, Garden City, New York 11530-9385. Envelopes received from the Post Office Box were opened and sorted into correspondence, such as requests for claim forms, and actual Proof of Claim forms. The correspondence received was reviewed and appropriate responses given. Each Proof of Claim form and the supporting documentation submitted with it was scanned into GCG's computer system under appropriate batch controls and any changes or additions to the trading records provided to GCG by Lexecon, including purchase and sale

3

transactions, were entered into GCG's computer database. The documentation provided in support of each claimed transaction by the claimant that had not already been provided by Lexecon was reviewed to ascertain whether the Claimant had in fact purchased Non-Depository Investment Security by or through NationsBanc Investments, Inc., f/k/a NationsBanc Discount Brokerage, Inc., f/k/a NationsBanc Securities, Inc., NationsBanc Securities of Georgia, Inc. (as and when affiliated with NationsBank Corporation) or NationsSecurities or any successor of any of them during the period from August 25, 1991 through June 12, 1996, inclusive. Claims were then reviewed to be sure they were not from the defendants as described in the Stipulation and Agreement of Compromise and Settlement to the extent that the identities of such defendants are known to us through the list of defendants and through the Claimant's certification on the Proof of Claim form.

11. Our staff developed and implemented standard message and letter texts to inform claimants of any deficient conditions or ineligibility of their claims. A total of 90 message codes denoting status or conditions pertinent to the claims were entered into the system. Where a submitted claim lacked the required filing information or documentation to substantiate the Class Member's transactions during the Class Period, that had not already been provided by Lexecon, or was otherwise ineligible, a letter was sent to the Claimant advising him or her of the deficiency and requesting the submission of the appropriate documentary evidence or correction of the defect. Attached hereto as Exhibit A is a copy of the various forms of letters used to notify claimants of the deficiency in their claim.

12. Where a deficiency letter was sent, each Claimant was notified that unless the deficiency was corrected within 15 days, his or her claim would be accepted only to the extent of the documentation supplied, or that the claim would be entirely rejected if they had not supplied the required documentation or filing information for any transactions.

13. Claimants who submitted claims which showed that they were ineligible to participate in the litigation (for example, where their claim showed that they had not purchased Non-Depository securities by or through NationsBanc Investments, Inc., f/k/a NationsBanc Discount Brokerage, Inc., f/k/a NationsBanc Securities, Inc., NationsBanc Securities of Georgia, Inc. (as and when affiliated with NationsBank Corporation) or NationsSecurities during the Class Period) were sent a Rejection Letter. The Rejection Letters, samples of which are attached hereto as Exhibit B advised the Claimant of his right to request this Court's review of our administrative determination rejecting the claim. The letter stated that the Claimant could request this Court's review of the rejection of their claim by filing a statement in writing setting forth the reasons why they believe that the claim was adequately filed within 20 days from the date of the letter.

14. Responses to the letters were evaluated by the GCG staff. From the beginning of the project through March 23, 2000, a total of 71,743 pieces of incoming mail were processed.

## OTHER TASKS PERFORMED

15. In conducting the Settlement, the GCG Claims Processing Unit staff also performed the following additional tasks:

> a) conferred with counsel to define the project and guidelines for claim processing; trained staff in the specifics of the project;
>
> b) defined and created computer scanning programs necessary to accommodate the specific requirements for data capture of the Proof of Claim information and the specifications of the calculation program;
>
> c) entered new addresses into the data base on returned Proofs of Claim and remailed;

      d)   performed audit procedures to review claim data to perfect the data base; and

      e)   developed and tested the calculation program.

16.   In performing quality assurance reviews on the work described in ¶ 15, above, the GCG Quality Assurance Unit:

      (a)   checked that all "valid" claims that do not have proper Social Security Numbers were given a message flagging the computer system to denote that condition;

      (b)   determined that valid claims have no messages denoting invalidity;

      (c)   determined that claims that are ineligible had messages denoting invalidity;

      (d)   determined that claims that have purchases after the Class Period contain appropriate messages;

      (e)   determined that claim detail (transactional) messages appear only on claim detail records;

      (f)   determined that claimant identification messages appear only on claimant identification records;

      (g)   determined that all claims requiring letters as described in ¶ 11 above, were sent such letters;

      (h)   performed a final review of all deficient claims;

    (i)    specially reviewed claims with large dollar losses;

    (j)    determined that invalidity flags were set correctly in the computer table of messages; and

    (k)    tested the accuracy of the calculation program.

17. In support of the work described in ¶¶ 15 and 16, above, the GCG computer staff designed, implemented and tested the following programs unique to the Settlement:

    (a)    Calculation program with descending dollar and alphabetical order lists; and

    (b)    Check writing programs.

18. Of the 18,578 claims processed, a total of 7,198 were accepted. Submitted herewith as Exhibit C is a List of Eligible Claimants whose claims were found to be acceptable in whole or in part (once deficient conditions were cured), without regard to timeliness. The list is sorted alphabetically, showing the claim number, the claimant's Recognized Loss, name, city, state and zip code.

19. Claims which were properly filed and supported with adequate documentary evidence were recognized on the basis of their "Recognized Loss". Recognized Loss is determined as provided in the Plan of Allocation of Stipulation and Agreement of Compromised Settlement based upon the amount invested in Non-Depository securities.

20. Of the 18,578 processed, a total of 11,380 claimants were rejected for the following reasons:

(a) 2,123 filed deficient claim forms and failed to cure the deficiency after notice and an opportunity to cure;

(b) 1,046 filed claim forms which were duplicative of previously filed claim forms;

(c) 1,804 filed claim forms for transactions which did not fit within the definition of the class approved by this Court for the NS Customer Litigation;

(d) 6,407 filed claim forms having no loss when calculated in accordance with the Plan of Allocation.

21. Attached as Exhibit D is a List of Ineligible Claimants, which sets forth in alphabetical order the name of each claimant whose claim was determined to be ineligible in accordance with the Stipulation of Settlement, and the reasons therefor.

22. Twenty-eight claimants have requested this Court's review of the rejection of their claims. Attached hereto as Exhibit E is a list of claimants who have objected to GCG's administrative determination concerning their claim.

## TREATMENT OF LATE CLAIMS

23. Of the 421 claims postmarked later than the May 8, 1998 filing deadline, 173 claims were accepted and 248 claims were rejected on grounds other than lateness. Submitted herewith as Exhibit F is a list of all accepted late claims, showing the claimant's Recognized Loss. We respectfully request the Court approve our determination and the determination of counsel to accept these claims.

## DISTRIBUTION OF SETTLEMENT FUND

24. Presented in Exhibit D for the Court's review and approval is a List of Class Members entitled to distributions based on the recommendations presented herein.

25. GCG has spent the time necessary to do a thorough job of processing the claims and to protect the interests of each Class Member filing a claim. No claims were rejected out-of-hand and adequate time was spent communicating with Class Members and suggesting appropriate ways they could document their claims and participate in the Settlement. Telephone calls and written letters from Claimants to GCG were courteously handled. Class Members were assisted to the fullest extent possible. The professional attitude and work product of GCG was, I believe, of the highest quality.

26. It is respectfully requested that the Court enter an Order approving the above determinations accepting and rejecting the claims filed herein and approving the distribution of the Settlement Fund.

27. To carry out such orders as the Court may issue respecting the distribution of the Net Settlement Fund, the GCG staff will undertake the following tasks:

    (a) prepare checks and check registers, and mail checks by prepaid first class mail;

    (b) issue replacement checks upon request by payee;

    (c) research and remail undeliverable distributions; and

    (d) answer inquiries about checks.

...ies remaining in the Settlement Fund upon completion of the tasks enumerated in ¶ 27 above, as directed by the Court.

### RECORDS RETENTION AND DESTRUCTION

29. GCG respectfully requests authorization to destroy hard copy claim forms and supporting documents not less than one year, and magnetic media data not less than three years, after distribution of the Net Settlement Fund.

### CONCLUSION

30. For the foregoing reasons, it is respectfully requested that this Court enter an Order (1) approving the GCG's administrative determinations accepting and rejecting claims as herein set forth; (2) authorizing distributions of the Net Settlement Fund as described herein; and (3) authorizing destruction of paper copies of Proof of Claim forms and electronic copies of claim records after an appropriate time after the distribution of the Net Settlement Fund.

_____
DAISY SONALAN

Sworn to before me this

17th day of Aug, 2000

_____
NOTARY PUBLIC

KAREN L. WENZEL
NOTARY PUBLIC, State of New York
No. 01WE8786775
Qualified in Nassau County
Commission Expires January 31, 200_

10

# ADDITIONAL ATTACHMENTS <u>NOT</u> SCANNED

___ Exceeds scanner's page limit
___ Physical exhibit prevents scanning
✓ Other: Due to the physical nature.
The remainder of this pleading will not be scanned

**\*\*PLEASE REFER TO COURT FILE\*\***